**UNITED STATES DISTRICT COURT**
**DISTRICT OF NORTH DAKOTA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **RUNNING HORSE, LLC;** | § | |
| | § | |
| **PLAINTIFF** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **RODENBOUGH TRUCKING  &** | § | |
| **EXCAVATING, INC.; JESSIE** | § | |
| **RODENBOUGH; MATTHEW** | § | |
| **RODENBOUGH;** | § | **JURY DEMANDED** |
| | § | |
| **DEFENDANTS** | | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND REQUEST FOR TEMPORARY
RESTRAINING ORDER, INJUNCTIVE RELIEF AND DAMAGES**

COMES NOW Plaintiff, RUNNING HORSE, LLC, ("Plaintiff") by and through its attorneys O'Donnell, Ferebee & Frazer, P.C., and complains of Defendants RODENBOUGH TRUCKING & EXCAVATING, INC., JESSIE RODENBOUGH and MATTHEW RODENBOUGH (collectively "Defendants") and in support thereof would show unto this Honorable Court as follows:

**A.  NATURE OF THE ACTION**

1.      This is a case of embezzlement. The Defendants have embezzled over $1,400,000.00, and are actively liquidating their assets. Plaintiff seeks a Temporary Restraining Order to stop any sale of Defendants assets and to maintain the status quo.

2.      Plaintiff brings this action against Defendants for fraud, breach of fiduciary duty, conversion, conspiracy and violations of the Racketeer Influenced & Corrupt Organizations Act, 18 U.S.C. § 1964 et. seq. and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et. seq.

## B. PARTIES

3.     Plaintiff RUNNING HORSE, LLC ("RUNNING HORSE") is a North Dakota limited liability corporation, and is organized under the laws of the State of North Dakota and maintains its principal place of business in New Town, Mountrail County, North Dakota 58763.

4.     Defendant RODENBOUGH TRUCKING & EXCAVATING, INC. ("RTE, INC.") is an Idaho limited liability company, organized under the laws of the State of Idaho, authorized to conduct business in the State of North Dakota, maintains a principal place of business at PO Box 339, Surrey, ND 58785-0339, and its registered agent and address is, Matthew Rodenbough, 139 N. 3600 E, Rigby, ID  83442.

5.     Defendant JESSIE RODENBOUGH ("RODENBOUGH") is an individual who, upon information and belief, is domiciled at 499 N 4108 E., Rigby, Jefferson County, Idaho 83442.

6.     Defendant MATTHEW RODENBOUGH ("MATT RODENBOUGH") is an individual who, upon information and belief, is domiciled at 499 N 4108 E., Rigby, Jefferson County, Idaho 83442.

## C. JURISDICTION AND VENUE

7.     This action arises under the laws of the United States, in particular, the Rackateer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et. seq. and The Computer Fraud and Abuse Act ("CFFA"), 18 U.S.C. §1030 et. seq.  Accordingly, this Court has subject matter jurisdiction pursuant to 18 U.S.C § 1331, 18 U.S.C. §1964(c), 18 U.S.C. §1961 et. seq., and 18 U.S.C § 1030(g).

8.    This Court also has Diversity of Citizenship pursuant to 28 U.S.C. § 1332 because the plaintiff and the defendants are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

9.    This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) as those claims are so related to the federal claims in this action that they form part of the same case or controversy.

10.    Venue is proper in this district under 28 U.S.C. 1391(a)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

## D. <u>FACTS</u>

**a.    Factual Summary**

11.    Tesha Fredericks owns and is the President of RUNNING HORSE.

12.    From 2012 to 2016, JESSIE RODENBOUGH, RUNNING HORSE's employee and bookkeeper, conspired with her husband MATT RODENBOUGH to embezzle over $1,400,000.00 from RUNNING HORSE.

13.    JESSIE and MATT RODENBOUGH own a company named RODENBOUGH TRUCKING & EXCAVATING, INC.

14.    RODENBOUGH embezzled money from RUNNING HORSE via several different schemes:

a. RODENBOUGH made at least 46 wire transfers totaling $1,261,635.70 directly from RUNNING HORSE's bank account to RTE, INC.'s bank account;

    b.   RODENBOUGH signed at least 16 unauthorized checks totaling $139,548.14 from RUNNING HORSE's bank account directly to RTE, INC.'s bank account;

    c.   RODENBOUGH submitted false claims for employee reimbursement expenses;

    d.   RODENBOUGH used RUNNING HORSE's funds to pay personal debts; and

    e.   RODENBOUGH misappropriated funds through the improper use of RUNNING HORSE's factoring company.

**b.**    **Background**

15.    RUNNING HORSE is a local trucking company that services companies in the oil field industry. RUNNING HORSE was organized in North Dakota in November, 2011. RUNNING HORSE provides logistics in transporting freight and water for its customers. It typically enters into lease agreements with truck owners and drivers to transport freight for its customers. RUNNING HORSE also maintains a small fleet of its own vehicles and hires drivers to transport freight for customers.

16.    RUNNING HORSE operates out of a facility located at New Town, North Dakota.  Owner Tesha Jo Fredericks ("Fredericks") oversees the operation of the business and is responsible for the hiring and management of RUNNING HORSE's employees.

17.    In its beginning in 2011, RUNNING HORSE was operated by Fredericks and two or three employees. In less than three years, RUNNING HORSE quickly grew to approximately twenty office employees and over 150 truck/leased operators.

18.    On March 2, 2012, RUNNING HORSE hired JESSIE RODENBOUGH as an office manager/bookkeeper.  RODENBOUGH represented that she had experience in managing

an office, experience working in an oilfield office, and experience in bookkeeping. Initially, RODENBOUGH's duties as office manager were limited to reconciling Quickbooks and helping prepare invoices. As business began to rapidly increase, RODENBOUGH's duties likewise grew to include generating invoices to customers, approving tickets, writing checks, processing payments, overseeing outside accountants, overseeing factoring of invoices, maintaining insurance for entire company, entering and paying bills, and working with RUNNING HORSE's certified public accountant.

19.     Over time, RODENBOUGH gained access and control of all of RUNNING HORSE's financial accounts and bookkeeping records.

20.     RUNNING HORSE provided RODENBOUGH with the use of a company laptop computer.

### c.     Rodenbough Trucking and Excavating, Inc.

21.     RTE, INC. is a trucking company organized in Idaho in 2011. RTE, INC. owns a fleet of approximately 30 trucks, fourteen trailers and six other pieces of heavy excavating equipment. See RTE, INC.'s Equipment List, attached as Exhibit A.

22.     RODENBOUGH owned and operated RTE, INC. concurrently while she was employed by RUNNING HORSE from March 2, 2012 through January, 2016.

23.     In March 2012, RTE, INC. became a subcontractor of RUNNING HORSE and leased its equipment to RUNNING HORSE.

### d.     Misrepresentations and Concealment.

24.     At first, RODENBOUGH worked at the RUNNING HORSE office in New Town, ND. Over time, RODENBOUGH spent less time in the office and began working remotely. She would only come to the RUNNING HORSE office approximately once a week to

meet with Fredericks to review the financial records of the company. Fredericks would review the financial records and discuss the status of payments and accounts receivable with RODENBOUGH. RODENBOUGH always represented to Fredericks that RUNNING HORSE was doing well financially and was profitable. Fredericks had no reason to believe there was any trouble with RUNNING HORSE accounts and continued to trust RODENBOUGH to handle the company finances, and in fact, expanding her areas of responsibility.

25.    On April 13, 2015, RUNNING HORSE hired an office assistant to assist RODENBOUGH with bookkeeping and other corporate operations. However, RODENBOUGH refused to give the assistant access to any of the accounting software or bookkeeping records. RODENBOUGH told Fredericks she was too busy to train the assistant and too busy to give the assistant access to the bookkeeping records. In this way, RODENBOUGH was able to maintain complete control over the corporate books and records and hide the ongoing embezzlement.

26.    RODENBOUGH told Fredericks that she had timely paid RUNNING HORSE's tax bills to the IRS. However, on January 19, 2016, Fredericks received a garnishment notice from the IRS for RUNNING HORSE's unpaid taxes from 2013. When Fredericks confronted RODENBOUGH about the taxes, RODENBOUGH admitted to Fredericks that she had lied, and that she did not pay the tax bill in full when it was due as she had represented. Upon information and belief, RODENBOUGH had been intercepting notices from the IRS to RUNNING HORSE to conceal her theft and fraud from RUNNING HORSE.

27.    In late January 2016, RODENBOUGH again met with Fredericks and admitted that she had taken approximately $638,000 from RUNNING HORSE.

28.    On January 25, 2016, RODENBOUGH created a spreadsheet with a list of wire transfers she made from RUNNING HORSE to RTE, INC. See Exhibit B, spreadsheet created

by RODENBOUGH. The spreadsheet shows RODENBOUGH made 39 wire transfers totaling $1,203,765.40. RODENBOUGH then listed approximately $567,514.41 in payments she claimed RUNNING HORSE owed to RTE, INC. as offsets to the $1,203,765.40. On page 7 of the spreadsheet, RODENBOUGH states the total balance RTE, INC. owed to RUNNING HORSE was $636,250.97.

29.     RODENBOUGH eventually admitted to Fredericks that she had taken approximately $1,200,000.00 from RUNNING HORSE and promised to pay it back.

30.     On January 29, 2016, RODENBOUGH sent emails to Fredericks in which she admitted that she had taken money from RUNNING HORSE and promised to repay the debt. RODENBOUGH asked Fredericks if she could continue to work for RUNNING HORSE. RODENBOUGH stated that she would immediately liquidate all of her assets. See email correspondence dated January 29, 2016, attached as Exhibit C.

31.     Upon further investigation, it became apparent that RODENBOUGH had taken approximately $1,400,000.00 from RUNNING HORSE from 2012 through 2016. The embezzlement was far greater than RODENBOUGH had admitted and took several different forms:

**e. Unauthorized Checks and Wire Transfers From Running Horse's Account.**

32.     From 2012 to the present, RUNNING HORSE maintained a business checking and a business savings account with Wells Fargo. The last three digits of the checking account are 659 ("Checking Account"). The Checking Account was the primary account for the day to day operation of the business.

33.     In 2013, RODENBOUGH was responsible for paying business expenses and invoices of RUNNING HORSE. In this capacity, she was an authorized user on the Checking

Account and was permitted to write checks and make wire transfers on behalf of RUNNING HORSE.

34.     From June 3, 2015 to January 22, 2016, without the consent and knowledge of RUNNING HORSE, RODENBOUGH made forty-sixty (46) unauthorized wire transfers from the Checking Account to RTE, INC.  The wire transfers ranged in differing amounts from $772.21 to $200,000.00 and totaled $1,261,635.70.  See bank record of wire transfers attached as Exhibit D.

35.     In order to hide the 46 bogus wire transfers, RODENBOUGH created a false spreadsheet purporting to show the wire transfers were legitimate expenses that RUNNING HORSE owed to RTE, INC.  See Spreadsheet entitled "All transactions for Rodenbough Trucking and Excavating, Inc.," attached as Exhibit E. However, RUNNING HORSE has not found any documents that support money was due and owing to RTE, INC. associated with these wire transfers. The top entry or Exhibit E concedes it is not an expense and is referred to as a loan of $200,000.00.

36.     In addition, from 2012 to 2016, without the consent or knowledge of RUNNING HORSE, RODENBOUGH wrote the following checks from the Checking Account to RTE, INC. See bank record of checks drawn on the Checking Account, attached as Exhibit F:

| Date | Check Number | Amount |
|------|-------------|--------|
| 7/15/13 | 6079 | $34,500.00 |
| 6/4/13 | 5897 | $4,502.17 |
| 5/9/13 | 5896 | $1,742.50 |
| 1/3/13 | 5678 | $12,323.00 |
| 12/1/12 | 5608 | $10,000.00 |

| | | |
|---|---|---|
| 6/28/12 | 5344 | $5,679.52 |
| 6/22/12 | 5333 | $4,953.09 |
| 6/7/12 | 5306 | $13,916.30 |
| 5/23/12 | 5278 | $10,908.14 |
| 5/17/12 | 5247 | $12,412.55 |
| 5/10/12 | 5235 | $10,404.46 |
| 5/5/12 | 5223 | $159.12 |
| 5/4/12 | 5222 | $7,796.88 |
| 5/2/12 | 5216 | $3,358.72 |
| 4/3/12 | 5145 | $3,532.96 |
| 5/3/12 | 5217 | $3,358.72 |
| | **TOTAL:** | **$139,548.14** |

37.     RODENBOUGH created a fraudulent spreadsheet listing the checks and fake invoice numbers purporting to represent corresponding payments RUNNING HORSE owed to RTE, INC.  See Spreadsheet entitled "All transactions for RTE Inc." attached as Exhibit G. RUNNING HORSE has not been able to locate any documents suggesting money was due and owing to RTE, INC. associated with these checks.     In addition RODENBOUGH created another spreadsheet showing purported "loans" that RUNNING HORSE made to RTE, INC. The total amount of these "loans" is $47,803.00. See "RTE, INC. Advance Report" attached as Exhibit G.

38.     In sum, RODENBOUGH stole approximately $1,401,183.84 by making unauthorized wire transfers and writing unauthorized checks to RTE, INC. from RUNNING

HORSE's checking account. RODENBOUGH concealed her theft by falsifying RUNNING HORSE's accounting records.

### f.      False Claims For Employee Reimbursement

39.      Upon information and belief, from 2012 through 2014, RODENBOUGH made at least 34 false claims for employee reimbursement and expenses and wrote checks to herself from the Checking Account. The checks range in amounts from $24.85 to $6,700.00 and the total amount of the 34 checks is $57,720.49.

40.      RODENBOUGH maintained a spreadsheet in RUNNING HORSE's accounting records to detail the false claims for reimbursement. A copy of the spreadsheet entitled "All transactions for Jessie Rodenbough" is attached hereto as Exhibit H.

### g.      Used Running Horse Funds to Pay Personal Debts

41.      Upon information and belief, without the consent and knowledge of RUNNING HORSE, JESSIE RODENBOUGH paid debts owed by MATTHEW RODENBOUGH using RUNNING HORSE's funds.

42.      Specifically, RODENBOUGH made the following payments from the Checking Account to pay debts owed to Verizon Wireless on behalf of Defendant MATT RODENBOUGH. See bank records detailing transfers to Verizon Wireless, attached as Exhibit I.

| Date | Amount |
|------|--------|
| 9/10/14 | $ 742.16 |
| 11/21/14 | $ 716.53 |
| 3/16/15 | $ 671.27 |
| 5/13/15 | $ 467.19 |
| **TOTAL:** | **2,623.88** |

43.     RUNNING HORSE has retained a forensic accountant to investigate the full extent of RODENBOUGH's embezzlement.

### h.    RTE, INC. Invoices Paid By Integrity Factoring

44.     In March, 2012, RUNNING HORSE entered into a lease agreement with RTE, INC. wherein RUNNING HORSE agreed to pay RTE, INC. to transport freight and water for RUNNING HORSE's customers. Pursuant to the lease agreement, RTE, INC. was to pay RUNNING HORSE a 10% fee for winch work and 18% fee for water work on each ticket.

45.     Pursuant to the lease agreement, RUNNING HORSE would subcontract with RTE, INC., and RTE, INC. would provide the drivers and vehicles to transport the freight for RUNNING HORSE's customers. After the work was completed, RTE, INC. would create a ticket for review and approval by RUNNING HORSE.  RUNNING HORSE would then invoice the customer and, after the customer paid, would pay RTE, INC. minus RUNNING HORSE's 10% or 18% fee.

46.     In July, 2013, RODENBOUGH suggested to Fredericks that RUNNING HORSE use a factoring company to increase cash flow. At RODENBOUGH's suggestion, RUNNING HORSE entered into an agreement with Integrity Factoring ("Integrity") in which RUNNING HORSE agreed to sell to Integrity its accounts receivables at a discount.

47.     Under the factoring agreement, RUNNING HORSE would receive invoices from its subcontractors, verify and approve the invoices, and submit the invoices to Integrity for immediate payment. Integrity retained a percentage of the invoice as its fee, and paid RUNNING HORSE for the remaining amounts due on the invoice. In turn, RUNNING HORSE

paid its subcontractors. RUNNING HORSE customers would pay Integrity Factoring directly instead of paying RUNNING HORSE.

48.     As part of her duties and responsibilities as bookkeeper, RODENBOUGH would approve the subcontractor invoices and submit the invoices to Integrity for factoring.

49.     RUNNING HORSE used Integrity Factoring for only some of its customers, but not all.   Specifically, the subcontract work performed by RTE, INC. was not a part of the factoring arrangement with Integrity Factoring.   RTE, INC.'s invoices and tickets were supposed to be processed directly through RUNNING HORSE for payment and not through Integrity Factoring.

50.     As part of her fraudulent scheme to embezzle over $1,400,000.00 from RUNNING HORSE, RODENBOUGH submitted the RTE, INC. invoices to Integrity Factoring without the consent and knowledge of RUNNING HORSE.   When Integrity Factoring sent payment to RUNNING HORSE for these RTE, INC. invoices, RODENBOUGH directed Integrity to wire the money directly into RTE, INC. accounts without the consent and knowledge of RUNNING HORSE. See Integrity record of wire transfers, attached as Exhibit J.

51.     In addition, RODENBOUGH processed some payments to RTE, INC. without retaining the 10% or 18% fee for RUNNING HORSE pursuant to the lease agreement. See Invoices, attached as Exhibit K.

52.     In addition, RODENBOUGH created fraudulent invoices to RUNNING HORSE customers charging amounts in excess of the agreed upon Rate Sheet and then submitted the invoices to Integrity Factoring. Integrity Factoring paid the fraudulent invoices, but then could not recover the full amount of the invoice from RUNNING HORSE's customers. See Invoices, attached as Exhibit L. RUNNING HORSE is liable to Integrity Factoring for these chargebacks.

     **i.**    **Liquidating Assets**

53.    On January 27, 2015, MATT RODENBOUGH requested a meeting with Fredericks to determine how he and JESSIE RODENBOUGH could repay the money they had taken. MATT RODENBOUGH promised to give Fredericks the deed and titles to RTE, INC.'s vehicles and trailers. MATT RODENBOUGH told Fredericks that he had entered into a contract to sell RTE, INC.'s entire fleet of winch trucks and that he would give the proceeds of that sale to Fredericks. JESSIE RODENBOUGH promised to sign a written statement with the details of her theft of RUNNING HORSE.

54.    On January 28, 2016, Fredericks asked JESSIE RODENBOUGH for her statement and for the contract for the sale of the winch trucks. JESSIE RODENBOUGH reneged on her agreement, said she would not provide Fredericks a statement, had not sold the winch trucks, and that she had consulted an attorney to assist her in repaying the debt owed to RUNNING HORSE.

55.    In the early morning hours of January 29, 2016, without the consent or knowledge of RUNNING HORSE, Defendants JESSIE RODENBOUGH and MATT RODENBOUGH removed all of RTE, INC.'s trucks and trailers that were parked in RUNNING HORSE's yard.

56.    In addition, in the early morning hours of January 29, 2016, without the consent or knowledge of RUNNING HORSE, JESSIE RODENBOUGH and MATT RODENBOUGH entered the office of RUNNING HORSE and absconded with all of RUNNING HORSE's files relating to RTE, INC. The files consisted of RTE, INC. tickets, invoices, the lease agreement, and confidential financial records of RUNNING HORSE.

57.     On or around February 1, 2016, without the knowledge and consent of RUNNING HORSE, RODENBOUGH used erasing software to delete RUNNING HORSE files from her laptop computer in furtherance of her theft and fraud against RUNNING HORSE.

58.     Despite these repeated promises and representations, RODENBOUGH has not paid any money back to RUNNING HORSE.

59.     On February 10, 2016, Fredericks received notice that RODENBOUGH has been actively liquidating the assets of RTE, INC.  See February 10, 2016 Correspondence from Jordan Schuetzle to Tesha Fredericks, attached as Exhibit M.

## E.  CAUSES OF ACTION

## COUNT I: COMMON LAW FRAUD

60.     RUNNING HORSE incorporates all previous paragraphs as if fully set forth herein.

61.     Defendants made material misrepresentations about RUNNING HORSE's accounts, payments and the amounts RUNNING HORSE owed to RTE, INC., their business and their relationship with Plaintiff that they knew were false when made, with the intent to defraud, embezzle and steal from Plaintiff, and Plaintiff acted in reliance on Defendants' misrepresentations.

62.     Plaintiff was harmed by Defendants' misconduct, and seeks appropriate relief.

63.     Defendants' fraud, as alleged above, was malicious, in that Defendants specifically intended to cause substantial injury to the Plaintiff.

64.     Accordingly, Plaintiff is entitled to recover at least $1,400,000.00 in damages, plus exemplary damages, pre-judgment interest, post-judgment interest, court costs, and any other relief accorded by law.

## COUNT II: FRAUD AND DECEIT

65.     RUNNING HORSE incorporates all previous paragraphs as if fully set forth herein.

66.     Under North Dakota Century Code § 9-03-08, actual fraud consists of any of the following acts committed by a party to a contract, or within the party's connivance, with intent to deceive another party thereto or to induce the other party to enter into the contract:

      a.  The suggestion as a fact of that which is not true by one who does not believe it to be true;

      b.  The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true though that person believes it to be true;

      c.  The suppression of that which is true by one having knowledge or belief of the fact;

      d.  A promise made without any intention of performing it;

      e.  Any other act fitted to deceive.

67.     RUNNING HORSE and RTE, INC. entered into a valid and enforceable contract for the transport of freight for RUNNING HORSE's customers.

68.     RODENBOUGH made material misrepresentations of fact that she knew to be false when she fabricated invoices and submitted them to RUNNING HORSE with the intent to deceive RUNNING HORSE into paying for work RTE, INC. had not performed.

69.     RUNNING HORSE relied on RODENBOUGH's misrepresentations, paid RTE, INC. for the falsified invoices, and, as a result, RUNNING HORSE has suffered damages resulting therefrom.

70.     Accordingly, Plaintiff is entitled to recover at least $1,400,000.00 in damages, plus exemplary damages, pre-judgment interest, post-judgment interest, court costs, and any other relief accorded by law.

## COUNT III: BREACH OF CONTRACT

71.     RUNNING HORSE incorporates all previous paragraphs as if fully set forth herein.

72.     RUNNING HORSE and RTE, INC. entered into a valid and enforceable lease agreement.

73.     RTE, INC. breached the lease agreement by submitting false and fraudulent invoices to RUNNING HORSE and RUNNING HORSE's customers.

74.     As a result of RTE, INC.'s breach of contract, RUNNING HORSE has suffered damages in excess of $1,400,000.00.

75.     Accordingly, Plaintiff is entitled to recover at least $1,400,000.00 in damages, plus exemplary damages, pre-judgment interest, post-judgment interest, court costs, and any other relief accorded by law.

## COUNT IV: CONVERSION AND CIVIL THEFT

76.     RUNNING HORSE incorporates all previous paragraphs as if fully set forth herein.

77.     Defendants knowingly stole over $1,400,000.00 from RUNNING HORSE and kept the money for their personal benefit with the intent to deprive RUNNING HORSE of its property.

78.     Conversion consists of tortuous detention or destruction of personal property or a wrongful exercise of dominion or control over the property inconsistent with or in defiance of

the rights of the owner. *Perry Center, Inc. v. Heitkamp*, 576 N.W.2d 505 (1998). The gist of conversion is not in acquiring the complainant's property, but in wrongfully depriving the complainant of the property. *John Deere Co. v Nygard Equip. Inc.,* 225 N.W.2d 80, 89 (N.D.1974).

79.     Pursuant to the factoring agreement between RUNNING HORSE and RTE, INC., RUNNING HORSE was entitled to the possession of moneys rightfully owed to it by Integrity Factoring. By intercepting the funds owed to RUNNING HORSE and depositing the funds into RTE, INC.'s accounts, Defendants wrongfully exercised dominion or control over RUNNING HORSE's property.

80.     As a result of the wrongful acts of theft and conversion by Defendants, Plaintiff is entitled to recover at least $1,400,000.00 in damages, plus exemplary damages, pre-judgment interest, post-judgment interest, court costs, and any other relief accorded by law.

## **COUNT V: BREACH OF FIDUCIARY DUTY**

81.     RUNNING HORSE incorporates all previous paragraphs as if fully set forth herein.

82.     An employee who has any business to transact on the employee's own account similar to that entrusted to the employee by the employee's employer shall give the latter the preference always. N.D.C.C. § 34-02-14.

83.     During their employment, employees in a position of trust and confidence with their employer owe a fiduciary duty of loyalty to the employer in matters related to their employment. Restatement of Employment Law § 8.01(a).

84.     Employees breach their duty of loyalty to the employer by misappropriating the employer's property, whether tangible or intangible, or otherwise engaging in self-dealing

through the use of the employee's position with the employer. Restatement of Employment Law § 8.01(b)(3).

85.    Defendant RODENBOUGH breached her duty of loyalty to her employer, RUNNING HORSE, by misappropriating the property of RUNNING HORSE and embezzling at least $1,400,000.00 from RUNNING HORSE.

86.    As a result of Defendant RODENBOUGH's breach of duty of loyalty, Plaintiff is entitled to recover at least $1,400,000.00 in damages, plus exemplary damages, pre-judgment interest, post-judgment interest, court costs, and any other relief accorded by law.

## COUNT VI: Racketeering Influenced and Corrupt Organizations Act (RICO)

87.    RUNNING HORSE incorporates all previous paragraphs as if fully set forth herein.

88.    At all relevant times, RUNNING HORSE was a "person" within the meaning of RICO, 18 U.S.C. §§ 1961(3) and 1964(c).

89.    At all relevant times, JESSIE RODENBOUGH, MATT RODENBOUGH and RTE, INC. were "persons" within the meaning of RICO, 18 U.S.C. §§ 1961(3) and 1962(c).

90.    At all relevant times, JESSIE RODENBOUGH, MATT RODENBOUGH and RTE, INC. formed an association for the purpose of defrauding RUNNING HORSE. This association was an "enterprise" within the meaning or RICO, 18 U.S.C. § 1961(4).

91.    At all relevant times, this enterprise was engaged in, and its activities affected, interstate and foreign commerce, within the meaning of RICO, 18 U.S.C. §1962(c).

92.    At all relevant times, Defendants associated with this enterprise conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a "pattern of

racketeering activity" within the meaning of RICO, 18 U.S.C. §1961(5), in violation of RICO 18 U.S.C. §1962(c).

93.     Specifically, at all relevant times, Defendants engaged in "racketeering activity" within the meaning of 18 U.S.C. §1961(1) by engaging in the acts set forth above. The acts set forth above constitute a violation of one or more of the following statutes: 18 U.S.C. §1344 (financial institution fraud); 18 U.S.C. §1341 (mail fraud); and 18 U.S.C. §1343 (wire fraud). Defendants each committed and/or aided and abetted the commission of two or more of these acts of racketeering activity.

94.     The acts of racketeering activity referred to in the previous paragraph constituted a "pattern of racketeering activity" within the meaning of 18 U.S.C. §1961(5). The acts alleged were related to each other by virtue of common participants, a common victim (RUNNING HORSE), a common method of commission, and the common purposes and common result of divesting RUNNING HORSE of $1,400,000.00 and enriching Defendants at RUNNING HORSE's expense while concealing Defendants' fraudulent activities. The fraudulent scheme continued for over three years from 2012 until January, 2016 and threatened to continue longer but for the institution of this action.

95.     As a result of Defendants' violation of 18 U.S.C.  §1962(c), RUNNING HORSE has been divested of $1,400,000.00.

96.     As a result of Defendants' misconduct, Defendants are liable to RUNNING HORSE for its losses in an amount to be determined at trial.

97.     Pursuant to RICO, 18 U.S.C. §1964(c), RUNNING HORSE is entitled to recover threefold its damages plus costs and attorneys' fees from Defendants.

## COUNT VII: VIOLATIONS OF COMPUTER FRAUD AND ABUSE ACT

98.     RUNNING HORSE incorporates all previous paragraphs as if fully set forth herein.

99.     RUNNING HORSE provided RODENBOUGH with an Employee Handbook and RODENBOUGH signed the Employee Handbook confirming receipt. See RUNNING HORSE Employee Handbook, attached as Exhibit N.   The Employee Handbook strictly prohibits RUNNING HORSE employees from using RUNNING HORSE computers in connection with any illegal, fraudulent, or malicious conduct. See Exhibit N at page 10.

100.    RUNNING HORSE's computers and servers are involved in interstate and foreign commerce and communication, and are protected computers under 18 U.S.C. § 1030(e)(2).

101.    Once an employee begins violating a duty of loyalty to his employer any authorized access to a protected computer is withdrawn. *See International Airport Centers LLC v. Citrin*, 440 F.3d 418(7th Cir.2006), *NCMIC Finance Corp. v. Artino*, 638 F. Supp. 2d 1042, 1061 (S.D. Iowa 2009); *Lasco Foods, Inc. v. Hall and Shaw Sales, Marketing & Consulting, LLC,* 2009 UL 3523986(E.D.MO, 2010).

102.    Beginning in 2012 and continuing to 2016, RODENBOUGH violated her duty of loyalty to RUNNING HORSE by self-dealing and stealing over $1,400,000.00 from RUNNING HORSE.

103.    On information and belief, RODENBOUGH knowingly and with the intent to defraud, accessed RUNNING HORSE's computers and servers without authorization, or in excess of the authorization permitted, to perpetuate her fraud and theft against RUNNING HORSE in violation of 18 U.S.C. § 1030.

104.   On information and belief, after gaining access to RUNNING HORSE's computers and servers, RODENBOUGH obtained confidential information contained in RUNNING HORSE's financial documents, obtained confidential information about RUNNING HORSE's customers, and made unauthorized wire transfers from RUNNING HORSE's Checking Account, in violation of 18 U.S.C. § 1030(a)(2).

105.   Defendants knowingly, willfully, and with an intent to defraud, accessed RUNNING HORSE's computers and servers without authorization or in excess of authorization and obtained valuable information from RUNNING HORSE's computers and servers that, on information and belief, Defendants used to obtain something of value in violation of 18 U.S.C. § 1030(a)(4).

106.   In addition, Defendant knowingly caused the transmission of a program, information, code, or command, and as a result of such conduct, intentionally caused damage without authorization  to a protected computer, in violation of 18 U.S.C. § 1030(a)(5)(A)(i).

107.   RUNNING HORSE has suffered a "loss" as defined by 18 U.S.C. § 1030(e)(11) and damage by reason of these violations, including, without limitation, harm to RUNNING HORSE's computer systems, expenses associated with being forced to investigate and respond to the unauthorized access and abuse of its computers and servers, and other losses and damage in an amount to be proved at trial, in excess of $5,000.00 aggregated over a one year period.

108.   In addition, RUNNING HORSE has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by Defendants. Accordingly, RUNNING HORSE is entitled to injunctive relief.

## COUNT VIII: CONSPIRACY

109.     RUNNING HORSE incorporates all previous paragraphs as if fully set forth herein.

110.     The elements of civil conspiracy are 1) Two or more persons, and for this purpose a corporation is a person; 2) An object to be accomplished; 3) A meeting of minds on the object or course of action; 4) One or more unlawful or overt acts; and 5) Damages as the proximate result thereof. *In Re. North Dakota Personal Injury Asbestos Litigation No. 1,* 737 F.Supp. 1087 (Southern District, 1990).

111.     Defendants have conspired together to abscond with monies in excess of $1,400,000.00 and confidential financial documents belonging to RUNNING HORSE. This constitutes an illegal act which in turn is actionable as an unlawful civil conspiracy.

112.     As a result of Defendants' conspiracy, Plaintiff is entitled to recover at least $1,400,000.00 in damages, plus exemplary damages, pre-judgment interest, post-judgment interest, court costs, and any other relief accorded by law.

## COUNT IX: PUNITIVE DAMAGES

113.     RUNNING HORSE incorporates all previous paragraphs as if fully set forth herein.

114.     Defendants have acted with oppression, fraud and actual malice. The actions described above are of such bad character as to allow for the award of punitive damages. N.D.C.C.§32-03.2-11.

115.     Plaintiff seeks punitive damages in an amount to be determined by the jury.

F.  <u>REQUEST FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF</u>

116.    RUNNING HORSE incorporates all previous paragraphs as if fully set forth herein.

117.    RTE, INC. owns and is currently in possession of a fleet of approximately 30 trucks, fourteen trailers and six pieces of heavy excavating equipment. See Exhibit A, Schedule of RTE, INC.'s Assets.

118.    RODENBOUGH admitted to Fredericks that RODENBOUGH used the money she stole from RUNNING HORSE to make payments on some of the equipment listed in Exhibit A.

119.    Plaintiff has received notice that Defendants are actively attempting to liquidate their assets. See February 10, 2016 Correspondence from Jordan Schuetzle to Tesha Fredericks, attached as Exhibit M.

120.    Plaintiff requires injunctive relief, including a temporary restraining order, to prevent the imminent threat of Defendants liquidating their assets and absconding with the funds.

121.    Plaintiff seeks a temporary restraining order to preserve the status quo until a hearing can be held on a preliminary injunction.

122.    Plaintiff has a probable right of recovery and a likelihood of success on the merits, and the Plaintiff will suffer imminent, irreparable harm without Court intervention. There is no adequate remedy at law.

123.    Plaintiff is willing to post the necessary reasonable bond to facilitate the injunctive relief requested.

124.    The only adequate, effective, and complete relief to the Plaintiff is to enjoin the Defendants from further engaging in certain proscribed activities as set forth below.  Pursuant to

Fed. R. Civ. P. § 65 et seq. and in order to preserve the status quo during the pendency of this action, the Plaintiff seeks a temporary and permanent injunction, ordering the Defendants and their agents, servants, employees, independent contractors, attorneys, representatives, and those persons or entities in active concert or participation with them (collectively, the "Restrained Parties") as follows:

(1)    Enjoining the Restrained Parties from selling or disposing of any assets, including but not limited to the assets listed in Exhibit A.

(2)    Enjoining the Restrained Parties from contacting or soliciting any of RUNNING HORSE's carriers or business contacts.

(3)    Enjoining the Restrained Parties from the destruction or deletion of any documents, evidence or record, electronic or otherwise that relates to any of the matters implicated by this lawsuit or pertaining to the Plaintiff, including but not limited to all hard drives, backups, archives, and other possible sources of stored metadata or information.

## G.  ATTORNEYS FEES

125.    Plaintiff is entitled to recover attorneys' fees pursuant to 18 U.S. Code § 1964(c).

### Attorney Certification

On February 23 and February 24, 2016, counsel for Plaintiff called counsel for Defendant several times to confer on the Temporary Restraining Order. Counsel for Defendant returned the call but counsel have not been able to connect. On February 23, 2016, Plaintiff overnighted a check for the filing fee to the Clerk of the court. On February 24, 2016, the Clerk advised Plaintiff that the Petition must be filed by 4:00 pm on February 24, 2016, or else the Clerk would return the check to Plaintiff. After repeated attempts to confer with counsel for Defendant, as of

the time of filing, Plaintiff does not know whether Defendant is opposed to the Temporary Restraining Order.

Pursuant to FRCP 65(b)(1), the undersigned certifies that notice to Defendants of the Temporary Restraining Order would defeat the efforts of Plaintiff because there is a real and imminent threat that Defendants will immediately liquidate their assets and abscond with the funds before this matter may be heard by the Court.

## H.  <u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that:

1. The Court assume jurisdiction of this cause and that Defendants be cited to appear;

2. The Court enter a temporary restraining order, temporary injunction prohibiting Defendants from disposing of any assets until further notice of the Court;

3. The Court award damages to Plaintiff as specified above with Defendants being found jointly and severally liable;

4. The Court award reasonable and necessary attorneys' fees and costs;

5. The Court award Plaintiff pre-judgment and post-judgment interest at the highest rates allowed.

6. Plaintiff further prays for any such other relief as the Court may find proper, whether at law or in equity.

## I.  <u>JURY TRIAL DEMAND</u>

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

O'DONNELL FEREBEE & FRAZER, P.C.

By:    <u>/s/ William C. Ferebee</u>
        William C. Ferebee
        Federal I.D. No. 7017
        wferebee@ofmflaw.com
        Jason L. Frazer
        Federal I.D. No. 989109
        jfrazer@ofmflaw.com
        1790 Hughes Landing Blvd, Suite 550
        The Woodlands, TX 77380
        281.875.8200 Telephone
        281.875.4962 Facsimile
        ***ATTORNEYS FOR PLAINTIFF,***
        ***RUNNING HORSE, LLC***