IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Running Horse, LLC, | ) |
| | ) |
| Plaintiff, | ) **ORDER DENYING MOTION TO** |
| | ) **DISQUALIFY COUNSEL** |
| v. | ) |
| | ) |
| Rodenbough Trucking & Excavating, Inc.; | ) |
| Jessie Rodenbough; Matthew Rodenbough; | ) |
| Christine Boulter; and Unleashed | ) |
| Performance Labs, Inc., | ) |
| | ) Case No.: 1:16-cv-35 |
| Defendants, | ) |
| | ) |
| Rodenbough Trucking & Excavating, Inc.; | ) |
| Jessie Rodenbough; Matthew Rodenbough; | ) |
| and Unleashed Performance Labs, Inc., | ) |
| | ) |
| Third-Party Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| Tesha Fredericks; Joshua P. Jacobson; Paul | ) |
| Fredericks, Jr., and Payden Sorenson, | ) |
| | ) |
| Third-Party Defendants. | ) |

Before the court is Defendants Unleashed Performance Labs, Inc., Jessie Rodenbough, and Matthew Rodenbough's "Motion to Disqualify Counsel." (Docket No. 54). Unless otherwise noted, the following relevant facts are either undisputed or have not been sufficiently controverted.

I. **BACKGROUND**

On February 24, 2016, Running Horse, LLC ("Running Horse") initiated this action against Jessie Rodenbough, Matthew Rodenbough, and Rodenbough Trucking & Excavating, Inc. ("RTE") seeking to recover in excess of $1,400,000. (Docket No. 1). This complaint generally alleged Jessie

-1-

Rodenbough used her position as office manager/bookkeeper at Running Horse to make unauthorized transfers from Running Horse to RTE, a business owned by her and her husband, Matthew Rodenbough. With the court's leave, Running Horse filed its second amended complaint that asserts multiple causes of action against the Rodenboughs and RTE, including: fraud, fraud and deceit, breach of contract, conversion, civil theft, breach of fiduciary duty, conspiracy, violation of the Racketeering Influenced and Corrupt Organizations Act, violation of the Computer Fraud and Abuse Act, and violation of the Uniform Fraudulent Transfer Act. (Docket No. 45).

In the second amended complaint, Running Horse also included Unleashed Performance Labs, Inc. ("UPL") as a defendant. With respect to UPL, the second amended complaint alleges:

> 144. In early 2016, Matt Rodenbough, [Jessie] Rodenbough and RTE, Inc. transferred at least $100,000 of the monies Defendants stole from Running Horse to accounts for Unleashed Performance with the actual intent to hinder, delay or defraud Running Horse.
>
> 145. Before the transfer was made, Defendants had been sued or threatened with suit by Running Horse.
>
> 146. Matt Rodenbough, [Jessie] Rodenbough and RTE, Inc. transferred the $100,000 to Unleashed Performance without receiving a reasonably equivalent value in exchange for the transfer and Matt Rodenbough, [Jessie] Rodenbough, and RTE, Inc. became insolvent as a result of the transfer.
>
> 147. Matt Rodenbough, [Jessie] Rodenbough, RTE, Inc. and Unleashed Performance are liable to Running Horse pursuant to the Uniform Fraudulent Transfer Act, N.D.C.C. 13-02.1 et. seq.

(Docket No. 23-1). This complaint does not assert any other cause of action against UPL.

Prior to commencement of this litigation, Jessie Rodenbough retained Jason Frazer, a partner at O'Donnell, Ferebee & Frazer, P.C., to serve as counsel in incorporating UPL during March 2015. Frazer and O'Donnell, Ferebee & Frazer, P.C. (collectively "Frazer") also currently represent

Running Horse. According to his affidavit, Frazer prepared the organizational paperwork for UPL, which he filed with the Nevada Secretary of State. (Docket No. 65-1). As a part of this process, Frazer and Jessie Rodenbough engaged in a series of email exchanges in which they discussed the necessary information for incorporation, including: the name of the entity; the type of entity; the address for the entity; who would serve as the registered agent; name of officers; and the name of directors or managers. (Docket No. 90). According to his affidavit, Frazer also advised UPL on filing a trademark and acquiring an employer identification number for tax purposes. (Docket No. 65-1). Frazer's representation ended on May 14, 2015. Neither Frazer nor O'Donnell, Ferebee & Frazer, P.C. have provided any further representation to UPL since that time. Id.

## II. DISCUSSION

In the current motion, the Defendants ask the court to remove Frazer and his firm as counsel for Running Horse. The Defendants argue removal is necessary because Frazer's prior representation of UPL is substantially related to his current representation of Running Horse.

### A. Disqualification Standard

Whether to disqualify an attorney rests within the discretion of the court. Jenkins v. Missouri, 931 F.2d 470, 484 (8th Cir. 1991). In determining whether disqualification is warranted, the court must consider both state and federal law. With regard to former, this court considers the North Dakota Rules of Professional Conduct. Halligan v. Blue Cross and Blue Shied of N.D., No. A3-93-117, 1994 WL 497618 at *1 (D.N.D. Jan. 24, 1994). With regard to the latter, the Eighth Circuit has said "disqualification motions should be subjected to particularly strict scrutiny" because of potential abuses by opposing counsel. Macheca Transport Co. v. Philadelphia Indem. Co., 463 F.3d 827, 833 (8th Cir. 2006) (internal quotation omitted). This is so because "[a] party's right to

select its own counsel is an important public right and a vital freedom that should be preserved; the extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary." Id. (quoting Banque Arabe Et Internationale D'Investissement v. Ameritrust Corp., 690 F. Supp. 607, 613 (S.D. Ohio 1988). Any legitimate doubts should be resolved in favor of disqualification. Olson v. Snap Products, Inc., 183 F.R.D. 539, 542 (D. Minn. 1998).

With respect to conflicts between current and former clients, N.D.R. Prof. Conduct 1.9(a) provides: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents in writing." Here, Frazer does not dispute UPL qualifies as a former client or Running Horse's interests are adverse to those of UPL. Likewise, the Defendants do not argue Frazer's current and past representations are the same. Thus, resolution of the pending motion turns on whether Frazer's current representation of Running Horse is "substantially related" to his prior representation of UPL.

Under N.D.R. Prof. Conduct 1.9, matters are "substantially related" if "they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." N.D.R. Prof. Conduct 1.9 comment 3. According to the North Dakota Supreme Court, "substantially related" means "if the lawyer could have obtained confidential information in the first representation that would have been relevant in the second." Cont'l Res. Inc., v. Schmalenberger, 2003 ND 26, ¶ 12, 656 N.W.2d 730. This "presumes a lawyer acquired confidential information from a former client if the current representation of a client whose interests are adverse to those of the former client is the same as or

substantially related to the former representation." Id. at ¶ 15; N.D.R. Prof. Conduct 1.9 comment 3 (imputing knowledge of "confidential factual information as would normally have been obtained in the prior representation. . . ."). This rule, in effect, prohibits switching sides in litigation.

B. Prior Representation

As set forth in Frazer's affidavit, Frazer's representation of UPL consisted of preparing standard organizational and formational paperwork. (Docket No. 65-1). In this regard, Frazer requested and received standard information relating to name of the entity, the type of entity, the address for the entity, who would serve as the registered agent, name of officers, and the name of directors or managers. Frazer thereafter filed such paperwork with the Nevada Secretary of State. Id. Frazer further advised UPL on filing a trademark and acquiring an employment identification number from the IRS. Id. On this record, Frazer's representation was neither novel nor complex.

As to the specific information exchanged in the course of this representation, the parties present competing affidavits (Docket Nos. 56, 65, 78, 90) regarding the extent to which, if any, Frazer received confidential information concerning UPL's initial capitalization and the interrelatedness of UPL, RTE, and Running Horse. As discussed above, the court must impute knowledge of confidential information to Frazer if such information would normally have been disclosed in the prior representation. The court finds these topics would normally be discussed during the course of representing a client in incorporating a corporation. The topic of initial capitalization is highly relevant in corporate formation because initial capitalization, when insufficient, may expose corporate owners to liability by way of a piercing the corporate veil claim. Solid Comfort, Inc. v. Hatchett Hospitality, Inc. 2013 ND 152, ¶ 17, 836 N.W.2d 415 (noting "insufficient capitalization for the purposes of the corporate undertaking" may be considered in

deciding whether to pierce the corporate veil). Likewise, the topic of the interrelatedness between other existing corporate entities owned by the same parties seeking to create a new corporate entity is something that would normally be discussed under the circumstances. Accordingly, the court must charge Frazer with such knowledge for purposes of the forthcoming analysis.

## C. Nature of Current Litigation

As detailed above, the current global litigation between Running Horse and the Defendants involves multiple causes of action and bases for recovery, including fraud, fraud and deceit, breach of contract, conversion, civil theft, breach of fiduciary duty, conspiracy, violation of the Racketeering Influenced and Corrupt Organizations Act, violation of the Computer Fraud and Abuse Act, and violation of the Uniform Fraudulent Transfer Act. As to UPL specifically, Running Horse alleges RTE fraudulently transferring ill-gotten gains to UPL, rendering UPL liable for that transfer.

## D. Not Substantially Related

After carefully considering Frazer's prior representation of UPL with his current representation of Running Horse, the two representations are not substantially related. As discussed above, Running Horse is pursuing this litigation for fraud, fraud and deceit, breach of contract, conversion, civil theft, breach of fiduciary duty, conspiracy, violation of the Racketeering Influenced and Corrupt Organizations Act, violation of the Computer Fraud and Abuse Act, and violation of the Uniform Fraudulent Transfer Act. Running Horse is not attacking the validity of the corporate entity Frazer created, nor is it arguing the corporate entity Frazer created was created for an unlawful purpose. An attorney's representation of a corporate entity during its creation does not necessarily bar that attorney from representing a client adverse to that entity, especially when there is no clear connection between that creation and the later litigation. See Satellite Fin. Planning Corp. v. First

Nat. Bank of Wilmington, 652 F. Supp. 1281 (D.Del. 1987) (concluding disqualification was inappropriate when counsel who incorporated entity later sued that entity for various causes of action unrelated to the formation of that entity). On this record, Frazer's representation of Running Horse is not substantially related to his representation of UPL.

*1. UPL's Initial Capitalization*

Defendants argues Frazer should be disqualified because UPL's initial capitalization could become an issue in the course of litigation. In making this argument, the Defendants characterize Running Horse's complaint as asserting the Rodenboughs used money allegedly stolen from Running Horse to capitalize UPL. Because the nature and sources of financial assets, particularly those of the Rodenboughs, form the primary crux of this ligation, Defendants argue Frazer's prior representation of UPL is substantially related to his current representation of Running Horse.

There are a number of problems with this argument. The second amended complaint does not contain any allegation relating to the Rodenboughs using ill-gotten gains to capitalize UPL. Defendants' interpretation to that effect is a tortured attempt to connect the allegedly fraudulent transfer to Frazer's prior representation.[1] Defendants' argument also overemphasizes how UPL's initial capitalization relates to the micro and macro nature of the litigation. As concerning UPL separately, this litigation solely concerns whether Running Horse can set aside the transfer between

---

[1] The Rodenboughs' attempt to weave their assets into the discussion about Frazer's prior representation lacks any factual foundation. The affidavits submitted by Jessie Rodenbough do not attest to her having discussed the Rodenboughs' financial information with Frazer, only that of UPL. (Docket Nos. 56, 78). While the initial capitalization of a corporation is something normally discussed during a representation such as that provided by Frazer, the source and nature of an incorporators assets are not. A fleeting, perfunctory reference in briefing is not sufficient to connect this issue to Frazer's representation.

RTE and UPL as fraudulent.[2]  UPL's initial capitalization does not concern whether a transfer qualifies as a fraudulent transfer.  When considering the issue within the more global litigation, UPL's initial capitalization will be of no more consequence.  None of Running Horse's allegations mention the issue of UPL's initial capitalization as giving rise to a cause of action.  Any information regarding UPL's initial capitalization is not relevant regarding, for instance, Running Horse's fraud claim, conversion claim, breach of fiduciary duty claim, etc.  Short of the Rodenboughs confiding to Frazer they intended to capitalize UPL by way of proceeds originating from their defrauding of Running Horse, which Defendants certainly do not assert, the court does not see how UPL's initial capitalization will be relevant given the current causes of action.  As of this time, the court is not convinced UPL's initial capitalization is substantially related to the current litigation.

  2. *Interrelatedness of Running Horse, RTE, and UPL and the Global Litigation*

Defendant's further argue disqualification is necessary because Jessie Rodenbough discussed the interrelatedness of Running Horse, RTE, and UPL with Frazer.  When viewed in light of the specific cause of action alleged by Running Horse against UPL, any such discussions will be

---

[2]Based upon the nearly verbatim verbiage of the second amended complaint, Running Horse is likely to seek to void the transfer under N.D.C.C. § 13-02.1-04(1), which provides:
> (1)  A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>> a. With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>> b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction or the debtor intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

irrelevant because they do not concern any of the elements necessary to set aside a transfer as fraudulent. More globally, it is difficult to see how discussions about the interrelatedness of Running Horse, RTE, and UPL relates to whether Defendants committed fraud, fraud and deceit, breach of contract, conversion, civil theft, breach of fiduciary duty, conspiracy, etc., again short of the Rodenboughs divulging they were using RTE as a conduit for defrauding Running Horse and they intended for UPL to further that end. As of this time, the court is not convinced these discussions are substantially related to the current litigation

### III. CONCLUSION

After careful consideration, the court concludes disqualification of Frazer and O'Donnell, Ferebee & Frazer, P.C. is not warranted. As this case evolves, the circumstances might become such that the above discussed information pertaining to Frazer's prior representation becomes more central to the litigation. But, as of now, such information is only tangential to the specific cause of action against UPL and the other causes of action against Defendants. Under these circumstances, the court is not convinced Frazer's prior representation of UPL is substantially related to his current representation of Running Horse. Defendants' Motion to Disqualify Counsel (Docket No. 54) is **DENIED** without prejudice.

**IT IS SO ORDERED.**

Dated this 17th day of October, 2016.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court
